UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERIKA T. GRAY,

       Plaintiff,

v.                                                   CASE NO. 6:16-cv-500-Orl-40JBT

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. In a decision dated September 12, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability within the meaning of the Social Security Act from December 14, 2011, the amended alleged disability onset date, through the date

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

of decision.[2]  (Tr. 9–18.)  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned respectfully recommends that the Commissioner's decision be **AFFIRMED**.

**I.     Issues on Appeal**

Plaintiff makes the following three arguments on appeal:

> I.   The [ALJ] failed to apply the correct legal standards to the opinions of Ms. Gray's treating physician, Dr. Desrochers.
>
> II.  The ALJ failed to apply the correct legal standards and made findings not supported by substantial evidence at step four of the sequential evaluation process.
>
> III. The ALJ failed to apply the correct legal standards to Ms. Gray's testimony.

(Doc. 18 at 1–2.)

**II.    Standard of Review**

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept

---

[2] In the decision, the ALJ at least once mistakenly referred to the original alleged disability onset date of December 10, 2010 as the controlling date.  (Tr. 10.)  However, it is clear from the transcript of the hearing and from other portions of the decision that Plaintiff sought to amend the onset date to December 14, 2011, and the ALJ allowed it. (Tr. 11, 18, 28–30.)

> as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III.  The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairment of "degenerative disk disease of cervical spine." (Tr. 11.)[3] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 12–13.) Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> [T]o lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday, frequently stoop, kneel, crouch, and crawl, and occasionally climb ramps, stairs, ladders, ropes, and scaffolds.

(Tr. 13.) At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a receptionist. (Tr. 17.) Therefore, Plaintiff was not disabled. (Tr. 18.)

---

[3] The sequential evaluation process is described in the ALJ's decision. (Tr. 10–11.)

3

**IV.     Analysis**

**A.     Dr. Desrochers**

Plaintiff's first argument is that the ALJ "failed to apply the correct legal standards" to the "opinion" of her primary care physician, Dr. John Desrochers. (Doc. 18 at 10–13.) Plaintiff relies not on formal opinions from Dr. Desrochers, but rather on numerous notations in his treating records. (*Id.*) Plaintiff does not identity any specific "opinion," but in a lengthy paragraph describes the notes as follows:

> Dr. Derochers' opinions are important because they show a long list of severe impairments and limitations that go beyond the ALJ's findings. On December 1, 2011, he noted herniated disk in the neck with pain radiating into the shoulders, arms, and collarbone (Tr. 594). She was wearing a neck brace (Tr. 594). The objective exam found walking with a cane, limited range of motion, abnormal gait, and upper extremity hyperreflexia (Tr. 594). He diagnosed "Acute on chronic" cervical radiculopathy and prescribed steroids (Tr. 595). On December 12, 2011, Dr. Desrochers noted steroids helping "a little but not a lot", taking medication for nerve pain, and walking with a cane (Tr. 592). He diagnosed cervical radiculopathy (Tr. 593). The exam found pain with some range of motion in the neck and back (Tr. 593). On January 1, 2012, Dr. Desrochers noted continued "widespread pain, myofascial pain" after physical therapy and taking medication for migraines (Tr. 590). He diagnosed "Chronic" myofascial pain syndrome (Tr. 591). On July 12, 2012, Dr. Desrochers noted nerve pain, medication was working, and his examination documented that she used a cane (Tr. 660). He diagnosed myofascial pain syndrome and hyperlipidemia (Tr. 661). On July 30, 2012, Dr. Desrochers noted "a list of chronic complaints" and told her "She knows she can talk about these selectively as they arise" (Tr. 658). On August 27, 2012, Dr. Desrochers noted stress; lack of money; twitching in the arms, legs and fingers; "fingers lock up on her"; and her legs will move by themselves (Tr.

4

> 656). He diagnosed depression among other things (Tr. 657). On November 26, 2012, Dr. Desrochers noted depression, running out of medication, thigh pain and having to use her walker (Tr. 652). His examination found able to squat halfway down, walking with a cane, and gait was steady without a cane (Tr. 653). He diagnosed depression and incontinence (Tr. 654). On March 1, 2013, Dr. Desrochers noted she wanted to stop medication due to "menopausal symptoms recurring" (Tr. 648). On June 24, 2013, Dr. Desrochers stopped medication due to side effects, diagnosed incontinence with medication helping, and ordered testing for a memory disorder (Tr. 636). On December 5, 2013, Dr. Desrochers noted "a lot more migraines" with pain in the head and neck (Tr. 626). He diagnosed headaches "Likely related to existing cervical disc degeneration given association with arm pain…" (Tr. 628).

(Doc. 18 at 11–12.)

In support of her argument that the "ALJ did not state what weight she gave to Dr. Desrochers's opinions," Plaintiff relies primarily on *Winschel*. (*Id.* at 10, 12.) The undersigned recommends that this case is distinguishable from *Winschel* because the cited treatment notes do not include judgments about the severity of Plaintiff's impairments, or what she can still do despite those impairments, within the meaning of *Winschel*. Moreover, the undersigned recommends that any error on the ALJ's part in failing to treat certain portions of the treatment records as opinion evidence is harmless because Plaintiff has not shown how any of these notes are inconsistent with the ALJ's RFC assessment.

In *Winschel*, the Eleventh Circuit stated:

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the

5

> claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis* [*v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)]; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).
>
> . . .
>
> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

631 F.3d at 1178–79.

In *Winschel*, the ALJ "referenced Winschel's treating physician only once, and that reference merely noted that Winschel saw the doctor monthly." *Id.* at 1179. "The ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight.'" *Id.* The Eleventh Circuit rejected the Commissioner's argument that the ALJ was not required to assign evidentiary weight to Winschel's treating physician's treatment notes because they did not constitute a "medical opinion," finding that:

> The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's]

6

>   symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.

*Id.* The Eleventh Circuit ultimately determined that the ALJ's conclusions suggested that she had not considered pertinent elements of the opinions of a treating and examining physician, and therefore reversed for the ALJ to "explicitly consider and explain the weight accorded to the medical opinion evidence." *Id.*[4]

In this case, the ALJ described Plaintiff's treatment with Dr. Desrochers as follows:

>   The medical records show the claimant has presented to Brevard Health Alliance with complaints of pain in her neck that radiated to her shoulders. Physical examination showed the claimant to have pain in her upper back upon hyperflexion, but the rest of her examinations were unremarkable (Exhibit B16F/3-4). Diagnosis was cervical radiculopathy and she was administered a steroid pain injection which she stated provided a few days relief (Exhibit B16F/3).
>
>   The claimant continued to be followed by this provider, follow up visits show that the claimant reported the current medication regimen was working well for her and subsequent follow up visits from August 2012 through December 2013 show the claimant did not complain of pain in her neck and back, but was seen for various other ailments (Exhibit B21F/11-39). In December 2013 she began to complain again of headaches and left sided neck pain and an x-ray of the cervical spine taken in December 2013 showed status post fusions C5-C6 and C6-C7 with anterior fusion plate at C6-C7 as well as mild spondylosis at C4-C5 but no acute findings. Diagnosis was headache for which she was prescribed pain medication (Exhibit B20F/1, B21F/8-10).

---

[4] The Eleventh Circuit never quoted from or specifically described the pertinent medical records at issue.

(Tr. 15.) The ALJ did not ascribe specific weight to anything in Dr. Desrochers's treatment records.

Plaintiff argues that the ALJ should have treated as opinion evidence, and assigned weight to, the numerous record entries previously described, including subjective complaints, physical examination findings, diagnoses, and treatment recommendations. (Doc. 18 at 11.) The undersigned recommends that this argument be rejected. First, as Defendant argues, "many of the purported opinions are Plaintiff's own complaints . . . ." (Doc. 21 at 1.) For example, Plaintiff states: "On December 1, 2011, [Dr. Desrochers] noted herniated disk in the neck with pain radiating into the shoulders, arms, and collarbone (Tr. 594)."[5] (Doc. 18 at 11.) However, the treatment note reveals that this is part of Plaintiff's history given to the doctor, not his opinion. (Tr. 594.) The undersigned recommends that the ALJ did not have to ascribe weight to Plaintiff's own subjective complaints.

Moreover, the undersigned recommends that *Winschel* does not stand for the proposition that the ALJ must treat as opinion evidence, and assign weight to, every physical examination finding, impression, diagnosis, or treatment plan referred to in the records. To interpret *Winschel* in this manner would place an unrealistic burden on ALJs because it would require them to address innumerable

---

[5] Although December 1, 2011 is slightly outside the time period at issue, entries on that date are cited by Plaintiff and are used by the undersigned as examples.

8

physician observations, findings, impressions, diagnoses, and remarks.[6]  The lengthy recitation set forth by Plaintiff of a portion of Dr. Desrochers's records, containing eight diagnoses in just the portions cited, not to mention numerous observations, recommendations, etc., provides a good example of the unworkability of Plaintiff's argument.  In addition, Plaintiff's argument is contrary to the law that the ALJ need not refer to every piece of evidence in the decision.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (internal citations and quotation marks omitted).  Thus, the undersigned recommends that the ALJ did not err in failing to state the weight she was according to the treatment records, or portions thereof, of Dr. Desrochers.[7]

In addition, the undersigned recommends that any error on the ALJ's part in failing to treat certain portions of the treatment records as opinion evidence is

---

[6] Moreover, diagnoses do not establish disability.  *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on her ability to work.") (quotations omitted).

[7] Plaintiff should also not be heard to argue that the ALJ should have given weight to some but not all of the record notations.  She sets forth no basis to make such a distinction, and the undersigned discerns none.  The cited notes simply do not constitute opinion evidence.

harmless because Plaintiff has not shown how any of these items are inconsistent with the ALJ's RFC assessment. *See Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) ("Although he did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, his RFC finding was not inconsistent with this.") (footnote omitted).[8] For example, Plaintiff does not show how Dr. Desrochers's notations that, on a particular date, December 1, 2011, Plaintiff was walking with a cane, her gait was abnormal, and she had limited range of motion of her cervical spine "due to guarding," are inconsistent with the ALJ's RFC assessment. (Tr. 594.) The same is true of Dr. Desrochers's impression, on that date, of cervical radiculopathy, and his treatment plan of steroids, physical therapy and perhaps cervical traction. (Tr. 595.) The same is also true of the multitude of other notations upon which Plaintiff relies. (Doc. 18 at 11–12.) Thus, the undersigned recommends that, to the extent any actual opinion evidence might be buried somewhere in Plaintiff's treatment records, the ALJ's failure to address it as such is harmless.

The undersigned also recommends that the Court reject Plaintiff's related argument that the ALJ's summary of Dr. Desrochers's treatment records is insufficient. (*Id.* at 12–13.) Although the ALJ did not refer to every physical

---

[8] Although the undersigned does not rely on unpublished opinions as binding precedent, they may be cited throughout this Report and Recommendation as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

examination finding or diagnosis, there was no need for her to do so.  *See Dyer*, 395 F.3d at 1211.  The undersigned recommends that the ALJ's summary of Dr. Desrochers's records is sufficient to show that she considered Plaintiff's medical condition as a whole.

### B.    RFC Assessment

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence because she failed to include Plaintiff's need for a cane, upper extremity limitations, and limitations due to migraine headaches.  (Doc. 18 at 13–16.)  The undersigned recommends that the Court reject this argument as well.

Regarding the need for a cane, Plaintiff argues:

> Using a cane: Dr. Desrochers' examinations found abnormal gait (Tr. 594) and using a cane (Tr. 592, 594, 653, 660).  Dr. Mignogna's exam found holding a cane, unsteady heel and toe walking, and difficulty squatting (Tr. 583-584).  He opined that she needed to use a cane for walking more than 20-30 feet (Tr. 585).

(Doc. 18 at 14.)

Dr. Desrochers never prescribed a cane or opined that Plaintiff needed one. The undersigned recommends that Dr. Desrochers's mere observation that Plaintiff was using a cane, and his physical examination finding of an abnormal gait, did not require the ALJ to include this limitation in the RFC assessment.  On January 12, 2012, Dr. Desrochers noted that Plaintiff's gait and station was normal, and that she was "carrying a cane."  (Tr. 591.)  He also stated that Plaintiff was

"moving and ambulating well today." (Tr. 591.) Thus, there is nothing in the records of Dr. Desrochers that required the ALJ to include the use of a cane in the RFC assessment.

On March 1, 2012, Plaintiff underwent a consultative examination with Dr. Joseph Mignogna. (Tr. 581–85.) Dr. Mignogna did opine that Plaintiff needed a cane for distances beyond 20 to 30 feet. (Tr. 585.) Although the ALJ noted this restriction, and gave Dr. Mignogna's opinions "great weight," the ALJ did not include this restriction in the RFC assessment or explain why she was not including it. (Tr. 16–17.) The undersigned recommends, however, that any error on the ALJ's part in this regard is harmless, because she specifically asked the vocational expert ("VE") a hypothetical question that included all of Dr. Mignogna's proposed restrictions, including the use of a cane, and the VE replied that Plaintiff could still perform her past relevant work as a receptionist. (Tr. 52.) *See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (holding ALJ's failure to include a driving limitation in hypothetical posed to VE was harmless where jobs identified by VE could be performed without driving and, thus, did not affect outcome of Plaintiff's case); *Timmons v. Comm'r of Soc. Sec.,* 522 F. App'x 897, 906 (11th Cir. 2013) (holding ALJ's omission of squatting restriction from RFC assessment was harmless error because squatting was not required by jobs identified by ALJ).

Similarly, there was no evidence compelling the ALJ to include upper extremity limitations in the RFC assessment. Almost all of the notations in the records upon which Plaintiff relies occurred well before December 14, 2011, the

12

amended alleged onset date.  (Doc. 18 at 14–15.)  No doctor opined that Plaintiff had upper extremity limitations, including Dr. Mignogna and the State agency doctor, Dr. James Patty.  (Tr. 110–12, 581–85.)  The undersigned recommends that none of Plaintiff's subjective complaints, or the physical examination findings upon which she relies, required the ALJ to include upper extremity limitations in the RFC assessment.

Regarding migraine headaches, Plaintiff again relies in large part on records that predated the amended alleged disability onset date.  (Doc. 18 at 15.)  Again, no doctor opined that Plaintiff had any limitation as a result of migraine headaches.  When Plaintiff saw Dr. Desrochers on December 5, 2013 for complaints of headache and left-sided neck pain, Dr. Desrochers diagnosed simply "headache," and thought it was related to her cervical disc disease.  (Tr. 628.)  Although Plaintiff indicated she had "migraines," Dr. Desrochers noted that Plaintiff did not have photophobia or nausea, and he did not specifically diagnose migraine headaches.  (Tr. 626, 628.)  Moreover, Plaintiff indicated that the headaches lasted only until she took Maxalt.  (Tr. 626.)  On January 7, 2014, Plaintiff denied headaches.  (Tr. 621.)  Thus, the undersigned recommends that substantial evidence supports the ALJ's determination not to include any specific limitations in the RFC assessment as a result of headaches, migraine or otherwise.

### C.   Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ erred in addressing her credibility.  (Doc. 18 at 16–18.)   If Plaintiff's "statements about the intensity, persistence, or

13

functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2.[9] The ALJ must consider all of a claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. §§ 404.1529(a) & 416.929(a). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562.

Regarding Plaintiff's credibility, the ALJ stated:

> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners. Although the undersigned does not find the claimant at all times symptoms free, the evidence does not support the degree of limitation the claimant alleges at any time since her alleged onset date. The undersigned generously considered the claimant's subjective complaints in the residual functional capacity assessment, which takes full account of the objective findings, incorporates the recommended limitations of the consultative and review physicians, and accords the claimant every reasonable benefit of the doubt.

---

[9] SSR 96-7p, which was in effect when the ALJ issued her decision, has been superseded by SSR 16-3p effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029.

(Tr. 17.)

Plaintiff's argument that the ALJ erred in assessing her credibility is primarily a reiteration of her previous arguments. (Doc. 18 at 16–17.) The undersigned has already recommended that those arguments be rejected. Plaintiff also argues that the ALJ's credibility finding is insufficiently explained because she did not cite specific evidence or explain what "documentary reports" meant. (*Id.* at 17.)

The undersigned recommends that Plaintiff's arguments be rejected. The ALJ provided explicit and adequate reasons, supported by substantial evidence, for discounting Plaintiff's credibility. By referring to the "documentary reports and the reports of the treating and examining practitioners," it appears that the ALJ was simply considering "the entire case record," as required by SSR 96-7p. The ALJ had previously set forth in sufficient detail a summary of Plaintiff's statements, third-party statements, the medical records, and the opinion evidence. (Tr. 13–17.)

In contrast to Plaintiff's testimony that she had severe limitations, such as that she needed a cane to walk, that she could sit for only 30 minutes, stand for only 5 to 7 minutes, and walk only approximately 100 feet before experiencing pain, the ALJ pointed out that Plaintiff received very little treatment during the time period at issue, and did not even complain of pain in her neck or back from August 2012 through December 2013. (Tr. 14–15.) The ALJ also detailed the consultative examination report of Dr. Mignogna. (Tr. 16.) The ALJ noted that the "examination was fairly unremarkable," which is consistent with Dr. Mignogna's report. (Tr. 16,

15

585.) Regarding Plaintiff's back, Dr. Mignogna noted that there were "no motor or reflex deficits in the upper or lower extremities. Prior cervical spine surgery was noted. Cervical and lumbar spine ranges of motion were mildly reduced, and squatting was limited." (Tr. 585.) Other than those limited findings, the examination, including regarding fibromyalgia, migraines, sciatica, and nerve disorder, was unremarkable. The ALJ also noted that the State agency doctor, Dr. Patty, opined to limitations that were much less severe than those testified to by Plaintiff. (Tr. 16–17.) In short, the undersigned recommends that the ALJ gave explicit and adequate reasons, supported by substantial evidence, for discounting Plaintiff's credibility.

## V.  Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.
2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January 4, 2017.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Paul G. Byron
United States District Judge

Counsel of Record